CARAS v. THALMANN et al.

(Supreme Court, Appellate Division, First Department.   May 13, 1910.)

1. BILLS AND NOTES (§ 117*)—BILLS OF EXCHANGE—PAYMENT—WHAT LAW
   GOVERNS.
   A bill of exchange payable in Paris, France, was governed as to payment by the law of such place, which regulated all matters connected with the performance of the contract.
   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 248–254; Dec. Dig. § 117.*]

2. BILLS AND NOTES (§ 437*)—BILL OF EXCHANGE—PAYMENT.
   Under Negotiable Instruments Laws (Laws 1897, c. 612, re-enacted in Consol. Laws, c. 38) § 310, providing that where a bill is drawn in a set each part of the set being numbered and containing a reference to the other parts, the whole of the parts constitute one bill, and section 315, providing that, except as otherwise provided, where any one part of a bill drawn in a set is discharged by payment or otherwise, the whole bill is discharged, a valid payment by the drawee of one part of a bill drawn in two parts discharges the whole bill.
   [Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 437.*]

3. STATUTES (§ 281*)—FOREIGN LAWS—SUFFICIENCY.
   An allegation that a certain section of the  French Code of Commerce in force in the Republic of France, where a bill was payable, provided that the party who pays a bill of exchange at its maturity and without opposition is presumed validly discharged. sufficiently alleged that by the law of France the payment of the first part of a bill was a valid payment and discharged the drawee.
   [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 380, 381;  Dec. Dig. § 281.*]

4. BILLS AND NOTES (§ 14*)—BILL OF EXCHANGE—BILL DRAWN IN A SET.
   Where a bill of exchange is drawn in a set, all of the parts constitute one bill.
   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 3;  Dec. Dig. § 14.*]

   Laughlin and Dowling, JJ., dissenting.

Appeal from Appellate Term.

Action by Joseph A. Caras against Ernest Thalmann and others, composing the firm of Ladenburg, Thalmann & Company.   From the determination of the Appellate Term affirming a judgment of the Municipal Court sustaining a demurrer to the complaint, plaintiff appeals.   Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Perry Allen, for appellant.
John G. Daniel, for respondents.

INGRAHAM, P. J.   The question presented on this appeal arises upon a demurrer to the complaint which was sustained by the courts below.   The complaint alleges that at the city of New York on or about March 28, 1905, the defendants, for value received, drew a bill of exchange in at least two equal parts of even date and tenor upon the Société Générale of Paris, France, requiring it to pay in Paris,

France, at sight, to the order of J. Palau & Co., a firm of Barcelona, Spain, the sum of 2,500 francs, French currency; that the defendants mailed both parts of said bill of exchange inclosed in postpaid wrappers on the 28th day of March, 1905, addressed to J. Palau & Co. at Barcelona, Spain, one part going by a steamer sailing on Wednesday and the other part by a steamer sailing the following day; that the said J. Palau & Co. never received the first part of the said bill of exchange or the proceeds thereof; that the second part of the said bill of exchange was received by the payees, by them duly indorsed and negotiated, and was in the course of business on the 12th day of April, 1905, presented to the drawee for payment, and payment thereof refused upon the ground that the first part of the said bill had in the course of business been presented for payment to the drawee on the 11th day of April, 1905, at Paris, France, and on that day paid by it to the holder thereof; that thereupon the second part was duly protested for nonpayment, and notice of dishonor given to the drawers, the defendants, and the same remains unpaid; that no request or instructions were given the defendants by the said J. Palau & Co. or by any other person as to the manner of delivering the said bill to said J. Palau & Co., said bill constituting a remittance by the defendants to said J. Palau & Co. for the payment of a debt due the latter by a third party who placed the defendants in funds for that purpose and instructed them to make the said remittance which defendants undertook to do; that when the first part of said bill was presented to the said drawee for payment and paid by it to the holder thereof it bore several indorsements each following the other and was to all appearances regular on its face, and the drawee paid said bill over its counter in good faith to the person presenting the same in the belief that it was making payment of said bill to the lawful holder thereof, although taking no steps to ascertain the identity of the person presenting the same or the genuineness of the indorsements thereon; that all of said indorsements on said first part of said bill are forgeries, and the names of all the indorsees thereon except that of J. Palau & Co., are the names of fictitious persons.

It is further alleged that by section 145 of the French Code of Commerce then and now in force in the Republic of France, where the bill was made payable, it is provided:

"Sec. 145. The party who pays a bill of exchange at its maturity and without opposition is presumed validly discharged."

The liability of the defendants is predicated solely on the nonpayment of the bill of exchange which they had issued duly protested for nonpayment. The action is brought by the assignee and is based upon the protest of the second part of the bill of exchange, the complaint admitting that the first part of the bill of exchange had been paid by the drawee in good faith to a person presenting the same, the indorsement of the payee, however, having been forged.

There can be no question but that the law of the place of performance, namely, Paris, in the Republic of France, governed as to the payment of this bill. By the bill in question the drawee of the bill was required to pay to the payee at Paris in the Republic of France the

sum specified. As to all the parties to the bill, whether maker, drawer, acceptor, or indorser all matters connected with the performance of the contract are regulated by the law prevailing at the place of performance. Smith v. Smith, 2 Johns. 242, 3 Am. Dec. 410; Spies v. National City Bank, 174 N. Y. 222, 66 N. E. 736. This latter case is reported in 61 L. R. A. 193, where there is a valuable note in which all the cases on the subject are collated, and the result of those authorities established the rule before stated. The bill of exchange was drawn in at least two parts of even date and tenor. By section 310 of the negotiable instruments law (chapter 612, Laws 1897, re-enacted in Consol. Laws, c. 38 [chapter 43, Laws 1909]), it is provided:

"Where a bill is drawn in a set, each part of the set being numbered and containing a reference to the other parts, the whole of the parts constitutes one bill."

Section 315 of the act provides:

"Except as herein otherwise provided, where any one part of a bill drawn in a set is discharged by payment or otherwise the whole bill is discharged."

Therefore a valid payment by the drawee of one part of this bill discharged the whole bill.

The complaint alleges that this bill was drawn in two parts, one of which parts was actually paid by the drawee to the person presenting it, although the payee's name thereon had been forged. If this payment was valid by the law of the Republic of France, it necessarily follows that the bill itself was discharged, and no liability could be predicated on the refusal to pay the second part, as payment of the first part had discharged the obligation to pay the same to the payee. The defendants were liable, if at all, under section 111 of the negotiable instruments law, which provides that the drawer by drawing the instrument engages that on due presentation the instrument will be accepted and paid, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder. If the drawee pays one part of a bill drawn in a set, the bill itself is discharged, and therefore the bill was not dishonored.

The complaint also alleges that the payment of the first part was a valid payment under the French law in virtue of the provisions of articles 144 and 145 of section 9 of title 8 of the French Code of Commerce then and now in force, and the sections of the said law translated from French into English are set forth in the complaint. By the demurrer the defendants admit those facts. This allegation is, I think, sufficient as an allegation of the law of France that the payment of the first part of this bill was a valid payment and discharged the drawee. The English translation that is given of section 145 of the French Code of Commerce is that the party who pays a bill of exchange at maturity and without opposition is presumed validly discharged. This is the allegation of the French law which is a fact alleged in the complaint and admitted by the demurrer. As I understand the meaning of this section, it discharges the drawee from all liability on actual payment of a bill to a person presenting it without regard to the validity of the indorsements thereon. The presumption as to the discharge of the drawee arises from the actual payment to a party presenting the

bill at maturity and without opposition. The bill was due, and it is alleged and admitted that it was paid without opposition. Therefore the presumption arises that the drawee was discharged, and under section 315 of the negotiable instruments law the whole bill was discharged.

We are not dealing with the question as to the discharge of the original debtor from his debt to the payee, the payee not having specified this method of payment of his debt, and undoubtedly there would be no discharge of the indebtedness until he received payment. Nor is this action brought to recover any damages that the original debtor of the payee has sustained because of the method adopted by the defendants in transmitting the bill to the payee. The action is brought solely upon the effect of an alleged refusal to pay by the payee. This liability is based upon the promise of the drawer of the bill to pay to the holder the amount ordered to be paid in the event that the bill is dishonored by the drawee. If the bill was paid by the drawee upon presentation according to the law of the place where payment was to be made, then it could follow that the obligation assumed by the defendants had been met, and no action could be based upon the failure to pay the bill when presented, the only obligation that the drawer assumed in drawing and delivering the bill. The liability of the defendants therefore depends entirely upon the question as to whether the bill was duly paid on presentation, and if the view before stated is correct—that payment by the drawee of the first part of the set discharged the whole bill—there can be no liability upon the obligation assumed by the defendants in drawing and delivering the bill, and if our construction of the allegations of the complaint as to the French law is correct it follows that the whole bill was discharged and the defendants were not liable.

The plaintiff contends that, as the second part of this bill which is now sued on was the only one delivered to the payee, therefore as between the drawers and the payee it constituted the only valid existing instrument, and that the payee could not be affected by the fate of the undelivered duplicate of the bill. But the bill itself was drawn in a set, and therefore all of the parts constituted one bill. The defendants were under no obligation to the payee to transmit a sum of money. The validity of the bill did not depend upon its being received by the payee, but was an existing obligation of the defendants when issued by them and delivered to the post office authorities for transmission. The right of the payees to recover depended, not upon their receipt of the bill, but upon a failure of the drawee to pay the bill when presented at maturity and without opposition. If the drawee duly paid the bill when presented according to the law of the place of payment, the bill was discharged, and no further liability existed upon it, and, as the complaint alleges that the payee did pay one part of the bill when presented to it according to the law of the Republic of France where it was payable, the bill itself having been discharged, it would seem to follow that no action could be maintained by the payee against the drawer for a failure to pay the bill. There is no allegation that the drawee was negligent in paying the first part of the set when presented.

The complaint alleges that the bill was paid by the drawee over its counter in good faith to the person presenting the same in the belief that it was making payment of the bill to the lawful holder thereof, although before making such payment it did not take any steps to ascertain the identity of the person presenting the same or the genuineness of the indorsements thereon.  It is not alleged that an obligation to ascertain the identity of the person presenting the bill or the genuineness of the indorsement was imposed upon the drawee by the law of France, and the allegation that the bill was paid in good faith and without opposition under the law of the Republic of France was, as before stated, a discharge of the drawers from any obligation upon it.

It follows that the complaint states no cause of action against the defendants, and the judgment should therefore be affirmed, with costs.

McLAUGHLIN and MILLER, JJ., concur.

DOWLING, J. (dissenting).  The defendants herein, for value received, at the city of New York, drew a bill of exchange in duplicate parts of even tenor and date, upon the Société Générale of Paris, France, requiring it to pay in Paris, at sight, to the order of J. Palau & Co., a firm of Barcelona, Spain, the sum of 2,500 francs in French currency.  Such parts were both mailed on March 28, 1905, to said Palau; one part being sent per "S. S. Baltie," and the other per "S. S. La Bretagne."  No instructions had been given by the payees as to the method of delivery of the bill, and they were unaware of its existence until the second part thereof was delivered to them through the mail at Barcelona; the said bill having been remitted by the defendants to Palau in payment of a debt due the latter by a third party, who had placed the defendants in possession of funds for the purpose, and had instructed them to make the said remittance, which defendants undertook to do, and for which they charged and received from said third party the usual rate of exchange.

The first part of said bill of exchange was never received by Palau & Co., and, when the second part received by them had been duly indorsed and negotiated in the course of business, it was, on April 12, 1905, duly presented by a subsequent indorsee to the drawee for payment, and payment thereof was refused upon the ground that the first part of said bill had, in the course of business, been presented for payment to said drawee, on April 11, 1905, and on that date paid to the holder thereof, whereupon the second part was duly protested and notice of dishonor duly given.

It is further alleged that, when the first part of said bill was presented to the drawee for payment and paid, it bore several indorsements, each following the other, and all apparently correct on their face; and the drawee paid said bill over its counter in good faith to the person presenting the same, in the belief that it was making payment of said bill to the lawful holder thereof; although before making such payment it did not take any steps to ascertain the identity of the person presenting the same or the genuineness of the indorsements thereupon.  All of such indorsements on said first part of the bill are alleged to be forgeries, and the names of all the indorsees thereon, ex-

cept that of J. Palau & Co., are alleged to be the names of fictitious persons. It is conceded that the payment as aforesaid of the first part of the bill was made without opposition and at maturity, and the defendants upon whom demand has been made, as well as the drawees, refuse to pay the second part of the bill on the ground that the payment of the first part of the bill was a valid payment under the French law, by virtue of the provisions of articles 144 and 145 of section 9 of title 8 of the French Code of Commerce then and now in force; and that consequently the defendants are discharged from all obligations to pay the second part of said bill. Such sections of the French Law, translated into English, read as follows:

"Sec. 144. The party who pays a bill of exchange before its maturity is responsible for the validity of the payment.

"Sec. 145. The party who pays a bill of exchange at its maturity and without opposition is presumed validly discharged."

The plaintiff is the assignee and indorsee of the second part of the bill, and of the cause of action thereupon, and his complaint sets forth substantially the foregoing facts.

To this complaint the defendant demurs, and the question presented is whether such facts set forth a good cause of action. Under article 111 of the negotiable instruments law of this state, the defendants would be liable as drawers of the bill in suit, unless they have been discharged by a valid payment made by the drawee. It cannot be doubted that, so far as the payment of this bill is concerned, its validity is to be determined by the law of France, being the place whereat payment was to be made. Under the French Code of Commerce it seems clear that a rule of evidence has been laid down whereby the burden of proof is upon the drawee to establish the validity of the payment made by him, if he pays the bill before maturity. If, on the other hand, the bill is paid at maturity and without opposition, then a different rule applies, and a presumption is created of a valid payment, which puts the burden of proof upon the payee of proving that the payment was, in fact, unlawfully made.

It is difficult to see upon what theory the presumption created under section 145 of the Code of Commerce can be held to be a conclusive one. It would seem that such presumption is like any other which can be met and overcome by proof. In this case, the plaintiff sets forth acts of negligence upon the part of the drawee, which, if proven, would be sufficient to make the payment of the first part of the bill unavailable as a defense to payment of the second part. This would seem to be clear on reason and is supported by the French commentators. Goirand, in his commentary on French Commercial Law (2d Ed. p. 210), treating of article 145, says:

"When the payment has been made at the date of maturity, it cannot be disputed, nor can the drawee be compelled to pay over again. It is otherwise, however, when the drawee has been served with an opposition to the payment of the bill. It must be remarked that this presumption of payment, having been validly made, ceases if grave negligence can be imputed to the drawee; consequently, the drawee, in order to pay with full security, must take certain precautions. Thus, he must, on presentation of the bill, examine it, in order to convince himself that the holder is the rightful owner. He must verify the chain of indorsers, and, if it be broken, refuse payment. In

other words, he must examine if all the signatures of the indorsers follow each other regularly and correspond, and whether each indorsement is followed by the signature of the indorser whose name is mentioned in the preceding indorsement, as it is this latter only who is the proprietor of the bill, and who has the right to transfer it."

For these reasons it appears that the complaint sets forth a good cause of action, and that the determination of the Appellate Term and the judgment of the Municipal Court should be reversed, with costs in this court and in the Appellate Term, and the demurrer overruled, with costs, with leave to the defendant to withdraw the demurrer and to answer upon payment of said costs.

LAUGHLIN, J., concurs.