(159 App. Div. 389.)

### CASPER v. KUHNE et al.

(Supreme Court, Appellate Division, First Department. December 5, 1913.)

1. BILLS AND NOTES (§ 429*) — BILL OF EXCHANGE — SEPARATE PARTS — PAYMENT.

Under the express provisions of Negotiable Instruments Law (Consol. Laws 1909, c. 38) § 315, when one part of a bill drawn in a set is discharged by payment or otherwise, the whole bill is discharged.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1245–1250, 1262, 1263; Dec. Dig. § 429.*]

2. BILLS AND NOTES (§ 386*)—FOREIGN BILLS—ACCEPTANCE—PAYMENT—WHAT LAW GOVERNS.

Whether a bill drawn in the United States, payable in a foreign country, has been duly accepted and paid, depends on the lex loci solutionis.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1051–1054; Dec. Dig. § 386.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. BILLS AND NOTES (§ 427*)—FOREIGN BILLS—PAYMENT.

Plaintiff, in New York, purchased from defendants their draft in a set of two drawn on a Vienna bank, payable in Vienna to U. or order. Plaintiff mailed the first of the set to U., and a day or two later mailed the second. The first draft never reached U., but was stolen and paid by the drawee on a forged indorsement. *Held,* that under the Austrian law, which does not compel a drawee to require proof of identification of the holder of a bill drawn to order, but authorizes the drawee to make payment to the holder instead of the person designated therein, and provides that in case payment is not made to the right person the loss must fall on the purchaser in the absence of blame fixed on the drawee, the drawee's payment discharged the bill and plaintiff could not recover from defendant.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1233–1244; Dec. Dig. § 427.*]

Appeal from Appellate Term, First Department.

Action by Louis Casper against Percival Kuhne and others. A City Court judgment in favor of plaintiff was reversed by the Appellate Term (79 Misc. Rep. 411, 140 N. Y. Supp. 86) and the complaint dismissed on the merits, and plaintiff appeals. Affirmed.

See, also, 156 App. Div. 899, 141 N. Y. Supp. 1112.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

John A. Thompson, of New York City, for appellant.
Geo. T. Hogg, of New York City, for respondent.

DOWLING, J. On December 11, 1905, the plaintiff as an undisclosed principal, through his employers, Bitwiller Bros., purchased from the defendants their check or draft, in a set of two, whereof the second, translated from the German language in which it was issued, reads as follows:

"No. 02331.                                               K2250.
"Pay you against this check out of our deposits (in case the first check remains unpaid) to Mrs. E. Utassy or order 2250 Krones.
"New York, December 11th, 1905.
                                           "Knauth, Nachod & Kuhne.
"To the Wiener Bank-Verein in Vienna."

On plaintiff's behalf there was paid to defendants on this transaction the sum of $458.44, and both checks of the set were delivered to him. The first of these he mailed on the day he received them (December 11th) to Mrs. E. Utassy, the payee, at Prague, Austria. The second was mailed a day or two later to the same party. On January 3, 1905, he received a cablegram from Mrs. Utassy advising him that a stranger had cashed the first of the set and the Wiener Bank refused to pay on the second. He demanded from defendants the refund of the money paid by him, which was refused. It appears from the deposition of Mrs. Utassy that she never received the first check mailed to her, but did receive the second on December 24, 1905, inclosed in a letter from plaintiff which advised her that the first check had been sent earlier, but the second was forwarded in case the first should be lost. The branch of the Wiener Bank being closed on Christmas day,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

she called thereat on the day following and presented the check, when she was advised by the bank manager that they would forward it to Vienna, and, if the first of the set had not been cashed, she would be notified and could call "after the holidays." When she did so call, she was advised that, as the first of the set had been cashed at the Vienna main office of the bank before her call at the Prague branch, the second check would not be honored.

The defendant offered testimony tending to establish that on December 21, 1905, the original (or the first of the set) was presented for payment at the chief cashier's department of the Wiener Bank-Verein, where it was attended to by Joseph Jaczko, employed in said department. It was paid to the holder who presented it, without any suspicion on the part of any one that it was not being presented by the true owner or that what is called the "indorsement" thereon was a forgery. The second of the set was not received at Vienna until after the first had been honored.

The "indorsement" on the first of the set, translated, is as follows: "Received on December 21st, 1905. E. Utassy, m. p." The letters "m. p.," according to the testimony, are an abbreviation in use, not only in banking circles in Vienna, but generally in that city, to signify "manu propria." According to the expert Dr. Hans Adler of Vienna, the law of Austria in force at the time of the transaction in question was as follows:

"There is no law in force in Vienna according to which the Wiener Bank-Verein as drawee is required to demand identification of the holder of a check made out to a specified name or order for the reason that, on the payment of a check drawn to order, the identification of the holder is required in no other manner than by a series of successive indorsements. * * * According to the laws in force in Vienna on December 21, 1905, there was no requirement, in case a stolen draft with a forged indorsement was paid by the drawee, whereby the drawee or the drawer of the draft was liable to pay said draft to the rightful owner thereof. As the check was made out to order and therefore could be paid by the drawee without proof of identification of the holder, there can be no question of paying a second time on the part of the drawee, as the check was genuine. The forgery of the receipt is in point of law quite irrelevant, as the drawee was justified in making payment to the holder of the check and not to a certain, specified person. The question who in such case has to bear the loss can be decided only according to the regulations of Civil Law. According to said law, when no blame attaches to any one party, the loss is that of the person whom it befalls. If, however, any one is to blame, he is liable for all losses that would otherwise not have been entailed. Accordingly, the consequences of the theft certainly fall upon Mrs. Utassy if she, owing to lack of care in the safe-keeping of the check, or, in any other manner, made possible or facilitated the theft of such check. On the other hand, the consequences of such theft fall upon the drawers in case transmission of the check was not made in the manner prescribed by the purchaser or if the customary and proper precautions attendant on its delivery were omitted. In the absence of blame on the part of any one, the loss, in my interpretation of the paragraph of the law referred to, falls upon the purchaser of the check as, at the time of the theft of said check, it had gone into the possession of the purchaser, out of possession of the drawers, and was covered by their remittance to the Wiener Bank-Verein. For this reason the loss, however the theft or the payment of the stolen check to the person who had illegally come into possession thereof may be regarded, must be borne by the purchaser of the check. The rules of law in force in Vienna on December 21, 1905, in reference to checks, are contained in articles 300-

305 of the Austrian Commercial Code, and in articles 36 and 45 of the 'Allgemeine Wechsel Ordnung' (General Bills of Exchange Act) and also in article 1311 of the Allgemeines Buergerliches Gesetsbuch (General Code of Civil Law) of which rules of law I annex a copy to my deposition."

Plaintiff's complaint contains the following averment referring to the second check of the set:

"Fifth. That thereafter said plaintiff for valuable consideration came into possession of said draft or check, and is now the lawful owner and holder thereof."

The defendant set up, as one of its separate defenses, that of payment in the following form:

"(1) That heretofore and on or about the 11th day of December, 1905, the defendants issued to Messrs. Bitwiller Bros. its draft or bill of exchange in a set of two, the second of which set is set forth in the complaint. (2) That thereafter said bill of exchange, being the first of the set, was duly presented to the drawee in accordance with the law of the place where payable, and accepted and paid."

[1] Where one part of a bill drawn in a set is discharged by payment or otherwise, the whole bill is discharged. Section 315, Negotiable Instruments Law; § 612, Laws of 1897; re-enacted in same form as section 315 by chapter 43, Laws 1909 [Consol. Laws 1909, c. 38].

[2] The question whether foreign checks or drafts have been duly accepted and paid is to be determined by the lex loci solutionis, in the case at bar the law of Austria.

"The complaint alleges that this bill was drawn in two parts, one of which parts was actually paid by the drawee to the person presenting it although the payee's name thereon had been forged. If this payment was valid by the law of the republic of France, it necessarily follows that the bill itself was discharged, and no liability could be predicated on the refusal to pay the second part, as payment of the first had discharged the obligation to pay the same to the payee. * * * If the bill was paid by the drawee upon presentation according to the law of the place where payment was to be made, then it would follow that the obligation assumed by the defendants had been met, and no action could be based upon the failure to pay the bill when presented, the only obligation that the drawers assumed in drawing and delivering the bill." Caras v. Thalman, 138 App. Div. 297, 300, 301, 123 N. Y. Supp. 97, 100.

"As the drafts were payable at Paris, the law of France determined what constituted payment." Kessler v. Armstrong Cork Co., 158 Fed. 745, 747, 752, 85 C. C. A. 642 (Cir. Ct. of App.), certiorari denied 207 U. S. 597, 28 Sup. Ct. 262, 52 L. Ed. 357.

[3] Without considering the other ground assigned as a reason for the affirmance of this judgment (the failure to protest the check in question), we are of the opinion that the testimony established the defendant's plea of payment of the check, in accordance with the laws of Austria, and that the determination of the Appellate Term appealed from is correct and should be affirmed, with costs to respondent, and judgment directed for defendants, dismissing the complaint upon the merits, with costs. All concur.